ALSTON & BIRD LLP
Karl Geercken (KG 5897)
F. Paul Greene (FG 1837)
90 Park Avenue
New York, New York 10016
Tel.: (212) 210-9400
Fax: (212) 210-9444

*Attorneys for Plaintiff the Estate of*
*Lorette Jolles Shefner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

THE ESTATE OF LORETTE JOLLES SHEFNER     :
by and through its executors Mr. Barry Shefner, Ms.     :
Ariela Braun, and Mr. Leon Miller,     :

                      Plaintiff,     :

      -against-     :

MAURICE TUCHMAN, ESTI DUNOW, the     :
GALERIE CAZEAU-BÉRAUDIÈRE, the     :
NATIONAL GALLERY OF ART, LONTREL     :
TRADING, and JOHN DOES 1-10.     :

------------------------------------------------------------- X

Case No. 08 CIV 4443(LTS)(DFE)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT THE
NATIONAL GALLERY OF ART'S MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTS ........................................................................................................................ 2

ARGUMENT .............................................................................................................. 6

I.  THE ESTATE ADEQUATELY ALLEGES REASONABLE RELIANCE
SUFFICIENT TO GROUND THE UNDERLYING FRAUD CLAIM
AGAINST TUCHMAN, DUNOW AND OTHERS ............................................... 6

    A.  The NGA Engages in an Impermissible Selective Reading of the Complaint .... 7

    B.  The NGA Misstates Clearly Established Law on Reasonable Reliance ............. 9

    C.  The Estate Is Under No Obligation to Plead Independent Investigation into
Value ........................................................................................................ 12

II.  THE ESTATE IS UNDER NO OBLIGATION TO "STATE A CLAIM"
THAT THE NGA WAS NOT A GOOD FAITH PURCHASER ............................ 13

III. THE ESTATE'S UNJUST ENRICHMENT CLAIM AGAINST THE NGA IS
PROPER ..................................................................................................... 21

    A.  The Court Has Subject Matter Jurisdiction ....................................................... 21

    B.  The Estate Properly States a Claim for Unjust Enrichment Against the NGA ... 21

IV. THE NGA IS THE PROPER PARTY TO THIS LITIGATION .............................. 22

V.  IN THE ALTERNATIVE, THE ESTATE SEEKS LEAVE TO AMEND, IF
NECESSARY .............................................................................................. 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Abercrombie v. Andrew College,*
438 F. Supp. 2d 243 (S.D.N.Y. 2006) .................................................................... 12

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007)........................................................................................... 7

*Block v. First Blood Assocs.,*
988 F.2d 344 (2d Cir. 1993) ................................................................................. 24

*Brignoli v. Balch, Hardy & Scheinman, Inc.,*
577 N.Y.S.2d 375 (1st Dep't 1991)....................................................................... 14

*Coleman v. B.G. Sulzle, Inc.,*
402 F. Supp. 2d 403 (N.D.N.Y. 2005).................................................................. 8, 9

*Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.,*
566 F.2d 289 (D.C. Cir. 1977).............................................................................. 23

*Friedman v. United States,*
No. 01 Civ. 7518 (LTS)(RLE), 2003 WL 1460525 (S.D.N.Y. Mar. 18, 2003) ................... 23

*Friedman v. United States,*
No. 01 Civ. 7518 (LTS)(RLE), 2003 WL 22846039 (S.D.N.Y. Dec. 1, 2003) ................... 23

*Garner v. First Nat'l City Bank,*
465 F. Supp. 372 (S.D.N.Y. 1979) ....................................................................... 18

*Gates v. Towery,*
435 F. Supp. 2d 794 (N.D. Ill. 2006).................................................................... 13

*Gildor v. United States Postal Serv.,*
179 Fed. Appx. 756 (2d Cir. 2006)........................................................................ 23

*Granat v. Center Art Galleries-Hawaii, Inc.,*
No. 91 CIV. 7252, 1993 WL 403977 (S.D.N.Y. Oct. 6, 1993)............................ 9, 10, 11

*Hooker v. United States Post Office,*
255 Fed. Appx. 658 (3d Cir. 2007)....................................................................... 23

*Hope v. Klabal,*
457 F.3d 784 (8th Cir. 2006) ............................................................................... 14

**Cases**          **Page(s)**

*Interested Lloyd's Underwriters v. Ross,*
No. 04 Civ. 4381, 2005 WL 2840330 (S.D.N.Y. Oct. 28, 2005) ..........................................15

*Johnson v. Smithsonian Inst.,*
189 F.3d 180 (2d Cir. 1999) ........................................................................................23

*Johnson & Johnson Prods., Inc. v. DAL Int'l Trading Co.,*
798 F.2d 100 (3d Cir. 1986) ........................................................................................15

*Jones v. Bock,*
127 S. Ct. 910 (2007)...........................................................................................13, 14

*Klimas v. Dep't of the Treasury,*
122 Fed. Appx. 355 (9th Cir. 2005), *cert. denied,* 544 U.S. 1000 (2005)............................23

*Kregos v. Associated Press,*
3 F.3d 656 (2d Cir. 1993) ........................................................................................7, 11

*Lama Holding Co. v. Smith Barney Inc.,*
668 N.E.2d 1370 (N.Y. 1996) ......................................................................................12

*Lindholm v. Brant,*
925 A.2d 1048 (Conn. 2007) ...............................................................................14, 15, 19

*Mac'Avoy v. The Smithsonian Inst,*
757 F. Supp. 60 (D.D.C. 1991)....................................................................................23

*Mallis v. Bankers Trust Co.,*
615 F.2d 68 (2d Cir. 1980), *abrogated in part on other grounds by*
*Peltz v. SHB Commodities, Inc.,* 115 F.3d 1082 (2d Cir. 1997)...........................10, 12, 13

*Maloul v. Berkowitz,*
No. 07 Civ. 8525, 2008 WL 2876532 (S.D.N.Y. July 23, 2008) ........................................9

*Masters v. GlaxoSmithKline,*
271 Fed. Appx. 46 (2d Cir. 2008)................................................................................7, 8

*McDarren v. Marvel Entm't Group, Inc.,*
No. 94 Civ. 0910, 1995 WL 214482 (S.D.N.Y. Apr. 11, 1995)...........................................9, 10

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,*
500 F.3d 171 (2d Cir. 2007) .........................................................................................10

**Cases**                                                                                                      **Page(s)**

*Morgold, Inc. v. Keeler,*
891 F. Supp. 1361 (N.D. Cal. 1995)..................................................................15, 16, 17

*Mora v. United States,*
955 F.2d 156 (2d Cir. 1992) ........................................................................21

*Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.,*
280 F. Supp. 2d 184 (S.D.N.Y. 2003) .............................................................24

*O'Rourke v. Smithsonian Inst. Press,*
399 F.3d 113 (2d Cir. 2005), *cert. denied,* 546 U.S. 814 (2005)...........................23

*Peak v. S.B.A.,*
660 F.2d 375 (8th Cir. 1981) .......................................................................23

*Porter v. Wertz,*
416 N.Y.S.2d 254 (1st Dep't 1979),
*aff'd,* 421 N.E.2d 500 (N.Y. 1981)..............................................................14, 18

*Republic Sav. Bank, FSB v. United States,*
80 Fed. Cl. 295 (Ct. Cl. 2008) .....................................................................21

*Roth v. Jennings,*
489 F.3d 499 (2d Cir. 2007) ..........................................................................5

*Royal Am. Mgrs. v. IRC Holding Corp.,*
885 F.2d 1011 (2d Cir. 1989) .....................................................................7, 11

*Tiger Sec. Group, Inc. v. State,*
No. 108685, 2007 WL 4105821 (N.Y. Ct. Cl. Sept. 25, 2007)............................14

*U.S. ex rel. Taylor v. Gabelli,*
No. 03 CIV 8762, 2005 WL 2978921 (S.D.N.Y. Nov. 4, 2005)...........................22

**Rules and Statutes**

28 U.S.C. § 1346 ..................................................................................22, 23

Fed. R. Civ. P. 8..........................................................................................13

Fed. R. Civ. P. 9(b)......................................................................................21

Fed. R. Civ. P. 12(b)(6) ..............................................................................7, 8

**Rules and Statutes**                                                                                **Page(s)**

N.Y. U.C.C. § 2-103 ...................................................................................................19

N.Y. U.C.C. § 2-103(1)(b)........................................................................................18

**Other Authorities**

24 N.Y. Jur. *Fraud & Deceit* § 176 (1962) ...........................................................10

*American Heritage Dictionary* 72 (2d College ed. 1985) ......................................8

## PRELIMINARY STATEMENT

This case turns on the fraudulent actions of two art experts (Defendants Tuchman and

Dunow, and others acting in concert with them), who induced an elderly widow and art neophyte

(Ms. Lorette Jolles Shefner) to sell a valuable painting (the "Painting") to or through them at a

fraction of its actual value. They then resold the Painting to the National Gallery of Art (the

"NGA") almost immediately thereafter for a profit of at least 100%. The NGA, for its part,

began efforts to acquire the Painting at the same time or before Tuchman and Dunow had

acquired it from Ms. Jolles Shefner. Further, the NGA either directly knew of the fraud against

Ms. Jolles Shefner, or chose to look the other way, relying instead exclusively on a "Seller's

Warranty" that was signed by none other than Tuchman. The NGA conducted effectively no due

diligence concerning its multi-million dollar acquisition of the Painting, but rather—with a wink

and a nod—incredibly put its faith in Tuchman, whom the NGA admits was aligned with (or

indeed himself was) the counterparty in the transaction.

The NGA now moves to dismiss the Estate's Complaint arguing that, because Ms. Jolles

Shefner relied on Tuchman (who, the NGA claims, was allegedly aligned with the counterparty

in her transaction), the Complaint fails—as matter of law—to state an actionable claim of fraud.[1]

The NGA also argues that the Estate "fails to state a claim" that the NGA was not a good faith

purchaser, because: (i) there was no due diligence required of the NGA; (ii) it was reasonable

*for the NGA* (as opposed to Ms. Jolles Shefner) to rely on Tuchman; and (iii) in any event, even

had the NGA conducted appropriate due diligence, such due diligence would have never

revealed Tuchman/Dunow's fraud.

---

[1] Tellingly, neither Tuchman nor Dunow sought dismissal of the well-pled fraud allegations in the Complaint. Rather, as set forth herein, they have admitted—via their Answer—several key facts that support the Estate's various claims and undermine the NGA's present motion.

The NGA's arguments fail because the NGA:

- misreads the Complaint—ignoring numerous clear allegations concerning: (i) Ms. Jolles Shefner's reasonable reliance on Tuchman/Dunow; and (ii) the NGA's duty to inquire;

- misconstrues/misstates well established law concerning pleading requirements (for example, by reading into a replevin claim the additional requirement of alleging with particularity that defendant was not a good faith purchaser) and the NGA's duty to inquire; and

- would have its cake and eat it too by claiming that Ms. Jolles Shefner could not have reasonably relied on Tuchman if he was aligned with her counterparty, but the NGA could rely on Tuchman (whom the NGA admits was on the other side of its transaction) and his one-page "Seller's Warranty."

In short, the NGA's motion is, at once, wrong on the law and blind to the facts clearly alleged in the Complaint. As set forth herein, such willful blindness did not make the NGA a good faith purchaser of the Painting in 2004, nor does it form an adequate basis for dismissal now. As a result—and as set forth in more detail below—the NGA's motion to dismiss should be denied in all respects.

## FACTS

The facts relevant to this Opposition are set forth in detail in the Complaint, attached as Exhibit A to the accompanying declaration of Karl Geercken, dated August 28, 2008 ("Geercken Decl."). By way of summary—and to focus on those allegations most important to the instant motion—the Estate clearly alleges that:

- Tuchman and Dunow are the world experts on Soutine and possess comprehensive and unique knowledge concerning each and every sale, public and private, of Soutine's works since 1993. (*See* Compl. ¶¶ 2(vi), 16, 19, 21.)

- Information concerning private sales—to which information Tuchman and Dunow had unique and exhaustive access—is generally "not available in the marketplace." (*Id.* ¶ 21.)

- Armed with this information, Tuchman and Dunow approached Ms. Jolles Shefner—whom they knew was an elderly widow and art neophyte—to induce her to sell the Painting in late 2003. (*Id.* ¶¶ 43-47.)

  - o They had previously attempted to induce Ms. Jolles Shefner to part with the Painting. Specifically, they had approached her in 1997 in an unsuccessful attempt to get her to donate the Painting to the Jewish Museum in New York City. (*Id.* ¶¶ 39-40.)[2]

- As part of their plan to induce a sale in 2003, Tuchman and Dunow provided her with a list of purported comparables (the "List") that gave an incorrect impression of the Painting's value by way of omitting each and every sale of a Soutine work over $1 million since 1993. (*Id.* ¶¶ 62-63.)

- On the basis of the List and other representations made by Tuchman and Dunow (including that their offer of $800,000—which later increased to $1 million—was "exceptionally advantageous"), Ms. Jolles Shefner agreed to sell the Painting to an entity called "Lontrel Trading," which was ostensibly in Switzerland. (*Id.* ¶¶ 61, 89-90)

- Throughout the whole transaction, Tuchman and Dunow never revealed that what they were doing (*i.e.*, brokering a sale although they were the pre-eminent authorities on authenticity and, to some extent, could "make the market" for Soutine) was generally unacceptable in the art world because it was a conflict of interest. (*Id.* ¶¶ 23, 41, 52, 56.)

- Tuchman and Dunow also never revealed that they were also actually conflicted in the transaction—representing the counterparty and receiving a sizable commission when they had indicated that they were working as an "accommodation" and willing to represent Ms. Jolles Shefner's interests in the transaction. (*Id.* ¶¶ 54-55, 57-58, 84-85, 98, 105.)

- The NGA, for its part, began efforts to acquire the Painting either before or shortly after Tuchman and Dunow had completed their fraud. (*Id.* ¶¶ 5, 25.)

- Further, the NGA ignored several warning signs (to borrow the NGA's turn of phrase from its moving brief) that there was something wrong with the transaction, to wit, that:

  - o the NGA was itself paying a price well below market (*id.* ¶ 106);

---

[2] As set forth herein, the NGA falsely claims that this attempt by Tuchman and Dunow to induce the sale or transfer of the Painting took place in 2003. (*See* NGA Mem. at 14.) To the extent that the NGA is improperly attempting to give the impression that the Painting was "on the market" or that Ms. Jolles Shefner was entertaining offers before Tuchman and Dunow approached her with their first $650,000 offer in late 2003, such an intimation is wholly unsupported by the Complaint and should be rejected.

- o the last record owner of the Painting was Ms. Jolles Shefner and there was no record of how the Painting had fallen into Tuchman/Dunow's hands (*id.* ¶¶ 5, 103, 107, 144);

- o the Painting had possibly changed hands during the Nazi era, giving rise to a heightened level of due diligence (*id.* ¶ 104); and

- o it is generally considered improper in the art world for an authenticity expert (such as Tuchman) to broker or otherwise have an interest in the sale of a painting in which the expert specializes (*id.* ¶ 23).

- • Despite these clear warning signs, the NGA conducted little or no independent investigation or other due diligence into the provenance of the Painting. (*Id.* ¶¶ 5, 26, 103-04, 143-45.)

- • The NGA's complete lack of due diligence did not comport with reasonable commercial standards in the industry. (*Id.* ¶¶ 103-04, 143-45.)

- • Further, the NGA had actual knowledge (or evinced reckless disregard) of Tuchman and Dunow's fraud in acquiring the Painting. (*Id.* ¶ 6.)

Many of the allegations concerning Tuchman and Dunow's underlying fraud have been admitted, via Tuchman and Dunow's Answer, dated June 13, 2008 (the "Answer") and attached to the Geercken Decl. as Exhibit B. Specifically, Tuchman and Dunow admit that:

- • They are among the foremost experts on Soutine in the world. (Answer ¶ 18.)

- • As a general practice, they would have been contacted concerning authenticity in relation to each and every Soutine sale since 1993. (*Id.* ¶¶ 19-20.)

- • Their *Catalogue Raisonné* is considered the most authoritative in the world. (*Id.* ¶ 19.)

- • They had—by the time of the sale of the Painting—a relationship with Ms. Jolles Shefner concerning the Painting for almost 20 years. (*Id.* ¶¶ 33-34.)

- • Although Ms. Jolles Shefner conducted the sale of the Painting through her children (Ms. Ariela Braun and Mr. Barry Shefner), Ms. Braun and Mr. Shefner were acting only as intermediaries and always at the direction of their mother. (*Id.* ¶¶ 48, 95.) Ms. Braun and Mr. Shefner took no independent action, nor did they exercise independent judgment, vis-à-vis sale of the Painting. (*Id.*)

- • Tuchman and Dunow sent the letter that the Estate now claims was a material misrepresentation concerning the value of the Painting. (*Id.* ¶ 53.)

- Tuchman and Dunow never disclosed that, in 2002, they had used an image of the Painting as a cover to a book they co-authored entitled "The Impact of Chaim Soutine." (*Id.* ¶ 76.)[3]

- They never disclosed that the Galerie Cazeau-Béraudière (or anyone else) would be involved in the purchase of the Painting in any way. (*Id.* ¶¶ 93, 98.)

- They received compensation from the subsequent resale of the Painting to the NGA. (*Id.* ¶ 105.)

By contrast, several of the key allegations made by the NGA in its motion are belied by its own documents. Specifically, the NGA claims to have purchased the Painting from the Galerie Cazeau-Béraudière (as referenced in the alleged "Seller's Warranty" the NGA proffers). (*See* NGA Mem. at 26.) The NGA website (referenced in the Complaint),[4] however, clearly states that the NGA "purchased" the Painting from Tuchman on November 17, 2004. (*See* Geercken Decl. Ex. D.) In addition, the NGA proffers a page from the Soutine *Catalogue Raisonné* as proof that it had no duty to perform due diligence at the time of purchase because there were no warning signs concerning the Painting's provenance. (*See* NGA Mem. at 21-22.) The page it proffers, however, was faxed to the NGA *by Plaintiff* in June 2007, when NGA counsel shockingly—three years after purchase of the Painting—requested that the Estate educate the NGA as to the Painting's provenance. (*See* Normand Decl. Ex. B (6/29/07 Croog Letter acknowledging prior request for information on provenance of the Painting); Shefner Decl. ¶¶ 4-5 & Ex. A (authenticating faxed provenance page).)[5] The NGA uses Plaintiff's fax

---

[3] It appears that this book, like the Tuchman/Dunow *Catalogue Raisonné* (as set forth herein) is in the NGA library. (*See* Geercken Decl. Ex. C.)

[4] *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) (on motion to dismiss, court may consider documents referenced in complaint, and such reliance is especially applicable in cases alleging fraud).

[5] Accordingly, the 6/29/07 Croog letter indicates that the NGA was *not* a good faith purchaser of the Painting. Indeed, Ms. Croog effectively admits that the NGA had—three years after its purchase of the Painting—little if any information concerning the Painting's provenance. Surely,

copy of the relevant *Catalogue Raisonné* page despite the fact that the NGA web-site clearly lists

the book as part of its library collection.  (*See* Geercken Decl. Ex. F.)  This goes to show that—

as alleged in the Complaint—not only did the NGA not conduct any due diligence vis-à-vis title

of the Painting at the time of purchase, *to this day* (nearly four years after it first acquired the

Painting) the NGA continues to rely exclusively on the representations of others (rather than

conducting any independent investigation itself) as to title.  Moreover, to this day the NGA

continues to tell two tales concerning its acquisition of the Painting:  one to the public, touting

world-expert Tuchman as the former owner, and one to the Estate (and this Court) claiming that

an alleged third party (and not Tuchman) sold the Painting to the NGA.

As a result of these facts, and as set forth more fully herein, the NGA's motion to dismiss

should be denied in all respects.

## ARGUMENT

**I.    THE ESTATE ADEQUATELY ALLEGES REASONABLE RELIANCE SUFFICIENT TO GROUND THE UNDERLYING FRAUD CLAIM AGAINST TUCHMAN, DUNOW AND OTHERS.**

Faced with its complete lack of due diligence in relation to its purchase of the Painting

(and its complete lack of documentation to support its claim of good faith purchaser status), the

---

an institution as large and prestigious as the NGA would have something more to offer as proof of its alleged good faith on a $2 million purchase than a one-page "Seller's Warranty," signed by a clearly conflicted party (*i.e.*, the seller's ostensible agent).  Surprisingly, however, it appears that the "Seller's Warranty"—with all of its faults—is all the NGA can rely on in this regard. Such a paucity of documentary proof not only runs afoul of the NGA's stated goals of operating "at the highest possible museum and scholarly standards," it also, as set forth in more detail herein, demonstrates that the NGA cannot claim good faith purchaser status vis-à-vis the Painting.  (*See* Geercken Decl. Ex. E (NGA Mission Statement).)  Further, the NGA would have the Court believe that it has no systems in place—no code of ethics or oversight committee— concerning its due diligence obligations, but rather lets the market decide how it should comport itself.  This too contradicts the clear letter of the NGA Mission Statement.  (*See id.*)

NGA must launch a technical attack against the Estate's pleadings. As set forth below, this attack fails miserably.

###    A.    The NGA Engages in an Impermissible Selective Reading of the Complaint.

The NGA argues that reliance is unreasonable as a matter of law because Tuchman/Dunow allegedly (at least according to the NGA) disclosed that they were representing the buyer. (*See* NGA Mem. at 12 (claiming that Ms. Jolles Shefner's reliance on Tuchman and Dunow was "unreasonable as a matter of law").) Not only does the NGA fail to cite authority supporting this broad (and, as set forth below, incorrect) assertion, the NGA's argument in this regard mischaracterizes (and, indeed, omits) clear, well-pled allegations in Complaint.[6]

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (the Rule under which the NGA attacks the underlying fraud claim against Tuchman, Dunow, and the other Defendants), however, *all* well-pled allegations (together with *all* reasonable inferences drawn therefrom) in the Complaint are accepted as true. *See Masters v. GlaxoSmithKline*, 271 Fed. Appx. 46, 47 (2d Cir. 2008). *Bell Atlantic Corp. v. Twombly*, (upon which the NGA heavily relies) did nothing to change this requirement, but rather made clear that in order to survive a motion to dismiss, plaintiff must allege facts sufficient to raise his claim above the level of mere speculation. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *see also Masters*, 271 Fed. Appx. at 47 (applying the "all allegations/all reasonable inferences" standard post-*Twombly*). Selective

---

[6] The two cases the NGA cites in support are wholly inapposite, inasmuch as they deal with a plaintiff relying on an attorney in an adversarial position. *See Kregos v. Associated Press*, 3 F.3d 656, 662, 665 (2d Cir. 1993) (defendant attorney in adversarial position); *Royal Am. Mgrs. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989) (fraud claim disallowed where plaintiff had counsel of his own, but relied on counterparty's counsel instead). Nowhere does the NGA cite authority stating that it is—as a matter of law—unreasonable for one party to a sale of goods to rely on representations of a counterparty or the counterparty's agent in relation to a fraud claim.

reading is therefore still impermissible, and a movant cannot simply ignore well-pled allegations (or reasonable inferences) clearly set forth in the Complaint. *See Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 416 (N.D.N.Y. 2005) ("selective reading of the complaint" is improper on motion to dismiss under R. 12(b)(6)). Further, all reasonable inferences to be drawn from these well-pled allegations are to be drawn *in non-movant's favor. See Masters*, 271 Fed. Appx. at 47.

In spite of this clear and well-established standard, the NGA's motion to dismiss flatly ignores numerous clear and well-pled allegations concerning the fraud by Tuchman and Dunow. For example, the Complaint makes clear that Tuchman and Dunow represented to Ms. Jolles Shefner that they were disinterested in the transaction and <u>never disclosed</u> that they were acting as agents for the buyer. (*See* Compl. ¶ 55.) Tuchman and Dunow also stated that they were performing "an accommodation"—a favor getting two parties together. (*Id.* ¶ 52.) *See American Heritage Dictionary* 72 (2d College ed. 1985) ("accommodate . . . 1. to do a favor or service for; oblige"). Moreover, the Complaint alleges that Tuchman and Dunow even offered to represent Ms. Jolles Shefner's interests in the sale. (Compl. ¶ 57.) On these facts, the NGA's claim that Tuchman/Dunow disclosed that they were on the other side of the sale from Ms. Jolles Shefner is simply not credible, belied by the allegations in the Complaint, and should be disregarded.

In regard to reasonable reliance, the Complaint (together with the admissions in Tuchman/Dunow's Answer) also makes clear that: (i) the Shefner engaged in no independent action or negotiation vis-à-vis sale of the Painting; and (ii) in that vein, every action alleged taken by either Ariela Braun or Barry Shefner was taken on behalf of and at the direction of Ms. Jolles Shefner. (Answer ¶¶ 48, 95.) It is therefore established for purposes of this litigation that neither Ms. Braun nor Mr. Shefner exercised any independent judgment vis-à-vis sale of the Painting. Further, the Complaint also makes clear that Ms. Jolles Shefner had no access to the

- 8 -

types of comprehensive and specialized information that were either misrepresented to and/or withheld from her by Tuchman and Dunow when they induced her to sell the Painting. (Compl. ¶¶ 12, 42.) Specifically, the Complaint alleges that she was computer illiterate, a neophyte in the art world, and had never sold an artwork before. (*Id.*)

The NGA, however, would have the Court simply ignore these allegations, and consider only the passages in the Complaint it feels are helpful to its motion. Such a reading is, however, impermissible on a motion to dismiss. *See Coleman*, 402 F. Supp. 2d at 416. For that reason alone, the NGA's motion should be denied in its entirety.

### B.    The NGA Misstates Clearly Established Law on Reasonable Reliance.

The NGA fails to cite (nor has research revealed any) case law supporting the NGA's claim that as a matter of New York law, reliance on a counterparty or a person aligned with counterparty in a sale of goods is unreasonable. On the contrary, there are a myriad cases where fraud (and, therefore, reasonable reliance) was found despite the fact that defendant was on the other side of a sales transaction. *See, e.g., Maloul v. Berkowitz*, No. 07 Civ. 8525, 2008 WL 2876532, at *3-4 (S.D.N.Y. July 23, 2008) (denying motion to dismiss fraud claim where plaintiff entered into an investment transaction in reliance on defendant counterparty's misrepresentations); *Granat v. Center Art Galleries-Hawaii, Inc.*, No. 91 CIV. 7252, 1993 WL 403977, at *3 (S.D.N.Y. Oct. 6, 1993) (reasonable reliance properly pled where plaintiff entered into an agreement to purchase artwork from defendant counterparty based on defendant's misrepresentations as to value).[7] Indeed, this is the very core of a fraudulent inducement claim. By definition, a fraudulent inducement claim is brought against the counterparty to a transaction

---

[7] In *Granat*, the plaintiff's fraud claim was eventually dismissed without prejudice for failure to allege the fraudulent nature of the misrepresentations at issue with requisite particularity, but that has no effect on the court's clear holding vis-à-vis reasonable reliance on a counterparty. *See Granat*, 1993 WL 403977, at *3.

or a party aligned with that counterparty. *See, e.g., McDarren v. Marvel Entm't Group, Inc.*, No. 94 Civ. 0910, 1995 WL 214482, at *6-7 (S.D.N.Y. Apr. 11, 1995) (denying motion for summary judgment to dismiss fraudulent inducement claim against counterparty).

Moreover, the *special facts doctrine* vitiates any rule of "counterparty beware" proffered by the NGA (which "rule" the NGA seems to have fashioned from whole cloth for purposes of the instant motion). Where an expert or party with special knowledge makes a representation as to facts peculiarly within his or her knowledge and generally not available to a counterparty, those statements will be actionable, even despite explicit disclaimers to the contrary. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980) *abrogated in part on other grounds by Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1090 (2d Cir. 1997) (finding fraud on basis of special facts). In sum, "[w]hen matters are held to be peculiarly within defendant's knowledge, . . . plaintiff may rely without prosecuting an investigation, as he has no independent means of ascertaining the truth." *Id.* (citing 24 N.Y. Jur. *Fraud & Deceit* § 176 at 247-48 (1962)); *see also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181-82 (2d Cir. 2007) (citing *Mallis*); *Granat*, 1993 WL 403977, at *3 (applying special facts doctrine in relation to an art transaction).

The *Granat* case is instructive in this regard. There, plaintiffs sued an art gallery that had sold them various works of art at greatly inflated prices. *See id.* at *1. The gallery had induced these purchases by misrepresenting to plaintiffs that the artworks were worth well in excess of the prices paid, and that they would be "liquid" assets that plaintiffs could sell at any time. *See id.* Plaintiffs, who were unsophisticated in the art world, claimed that their reliance on the gallery as to value of the artworks involved was reasonable. Based on these facts, the *Granat* court held that:

> Plaintiffs are novice art collectors with virtually no experience in buying fine art [who] based many of their decisions on representations made by defendants, purported experts in the field. As there is no reason to suspect that plaintiffs had any cause to know that defendants were not qualified to render appraisals, their allegations in the complaint are sufficient evidence to support the claim that plaintiffs' reliance was reasonable and that they were damaged thereby.

*See id.* at *3.

Here (as was the case in *Granat*), the Complaint clearly sets forth how Tuchman and Dunow are the experts of the world vis-à-vis Soutine and how they—and no-one else—have comprehensive and unique knowledge of sales of Soutine works, whether public and private. (*See* Compl. ¶¶ 2(vi), 16, 19, 21.) As a neophyte in the art world, Ms. Jolles Shefner could not have acquired this information. Had she hired an art appraiser, there is no guaranty (or indeed, any indication, based on the allegations in the Complaint) that the appraiser could have discovered this information either. This is because Tuchman and Dunow were also making at least tacit representations not only as to the value of the Painting, but also as to the extent of their knowledge (*i.e.*, that they weren't withholding anything), and no appraiser could have uncovered that. *See Granat*, 1993 WL 403977, at *3 (finding reasonable reliance properly pled when defendant art expert misrepresented the scope of its alleged knowledge). In any event, Ms. Jolles Shefner would have had to incur great expense to recreate even a portion of the comprehensive knowledge held by Tuchman and Dunow (if this would have even been possible at all). Moreover, the Complaint alleges that Ms. Jolles Shefner relied both on Tuchman and Dunow's expertise *and* on the relationship of trust and confidence the two had cultivated with her over the course of almost 20 years.

The cases the NGA cites in support of its argument are inapposite. As noted above, the *Kregos* and *Royal Am. Mgrs.* cases deal with one party relying on the legal opinions of an adverse party's attorney. *See Kregos*, 3 F.3d at 662, 665 (reliance on opposing party's attorney

in copyright dispute unreasonable); *Royal Am. Mgrs.*, 885 F.2d at 1016 (reliance on counterparty's attorney unreasonable where statute at issue was publicly available and representations did not concern facts peculiarly within attorney's knowledge). The *Abercrombie* case is also inapposite, inasmuch as it deals with creation of a fiduciary relationship sufficient to give rise to fraud. *See Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 274-75 (S.D.N.Y. 2006). Although the Estate reserves the right to assert a breach of fiduciary duty claim (and/or a fraud claim based on such a breach) against Tuchman and/or Dunow should appropriate facts arise in discovery, the fraud claim currently asserted against Tuchman, Dunow and the other Defendants turns, *inter alia*, on the *special facts doctrine*, and does not require a fiduciary relationship in order to be actionable. (*See* Compl. *passim* (nowhere alleging that a fiduciary relationship existed between Tuchman/Dunow and Ms. Jolles Shefner).) Nevertheless, the well-pled allegations in the Complaint concerning the long relationship of trust vis-à-vis the Painting are, at the very least, relevant to show the reasonableness of her reliance on Tuchman/Dunow's representations concerning value.

As a result, the NGA's arguments concerning reasonable reliance are wholly unsupported by the law and should be dismissed.

### C.   The Estate Is Under No Obligation to Plead Independent Investigation into Value.

The NGA seeks to read a new element into the pleading standard for fraud: independent investigation. (*See* NGA Mem. at 15-17.) There is, however, no such element to a fraud claim in New York, nor does the Estate cite to any authority requiring such an element. *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) (stating that a fraud "plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance

of the other party on the misrepresentation or material omission, and injury"); *Mallis*, 615 F.2d at

80-81 (stating that New York law "does not recognize a separate due diligence element [of

fraud], much less one that must be independently proved by clear and convincing evidence").

Rather, NGA relies heavily on *Hope v. Klabal* in this regard. (*See* NGA Mem. at 15-16 (citing

*Hope*).) *Hope*, however: (i) applies Minnesota law; and (ii) does not address the issue of

reasonable reliance, but rather turns entirely on the issue of reasonable diligence in discovering a

fraud for purposes of tolling the statute of limitations. *See Hope v. Klabal*, 457 F.3d 784, 788-94

(8th Cir. 2006). As a result, *Hope* is wholly inapposite to the question of whether a fraud

plaintiff must plead independent investigation, a question which courts in this Circuit have

answered with a resounding "no." *See, e.g., Mallis*, 615 F.2d at 80-81.

      Because there is no "independent investigation" element to a fraud claim in New York,

the NGA's argument in this regard should be rejected.

## II.    THE ESTATE IS UNDER NO OBLIGATION TO "STATE A CLAIM" THAT THE NGA WAS NOT A GOOD FAITH PURCHASER.

      In addition to the above, the NGA would put an additional hurdle in the Estate's path,

*i.e.*, by requiring the Estate to "state a claim" (whatever that might mean) that the NGA was not a

good faith purchaser for value of the Painting. (*See* NGA Mem. at 17-29.) As set forth below,

however, no such hurdle exists.

      Fed. R. Civ. P. 8 (which applies to a replevin claim) does not require a plaintiff to plead

that affirmative defenses do not apply. *See Gates v. Towery*, 435 F. Supp. 2d 794, 802 (N.D. Ill.

2006) (Rule 8 applies to replevin claim); *Jones v. Bock*, 127 S. Ct. 910, 921 (2007) (holding that,

under Rule 8, a plaintiff is "not required to specially plead or demonstrate" that an affirmative

defense does not apply).

The Estate, however, *does* plead that the good faith purchaser defense doesn't apply (and provides other supporting allegations of fact), but it is not required to go any further. (*See* Compl. ¶¶ 5-6, 26, 103-04, 143-45 (NGA either knew of or recklessly disregarded fraud and conducted no due diligence), 103-04, 143-45 (NGA's lack of due diligence did not comport with commercially reasonable standards in the industry).) Indeed, the *burden is on the NGA* to show that it was a good faith purchaser, not on the Estate to show that the NGA wasn't. *See Jones*, 127 S. Ct. at 921 (burden on defendant to prove affirmative defense); *Tiger Sec. Group, Inc. v. State*, No. 108685, 2007 WL 4105821, at *16 (N.Y. Ct. Cl. Sept. 25, 2007) ("Defendant bears the burden of proof on any affirmative defense, rights to set-off, or counterclaims asserted by it." (citing *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 577 N.Y.S.2d 375 (1st Dep't 1991))); *Lindholm v. Brant*, 925 A.2d 1048, 1055-56 (Conn. 2007) ("[T]he burden was on the defendant to show the existence of such facts as would entitle him to the status of a [good faith purchaser.]").

Further, the NGA's claim that it was a good faith purchaser of the Painting based on the facts alleged in the Complaint is spurious. Indeed, the NGA makes the incredible claim (spilling much ink in the process) that, as a matter of law, it was under no obligation whatsoever to conduct any due diligence in relation to its purchase of the Painting. (*See* NGA Mem. at 18-26.) Apart from the fact that the NGA appears to be improperly arguing the ultimate factual issue of the Estate's claim on a motion to dismiss, the NGA's position is absolutely contrary to controlling case law.

The controlling case in this District is *Porter v. Wertz*, in which the Appellate Division, First Department conclusively decided that—in the context of an art sale—a buyer has an obligation to undertake at least some reasonable investigation into title of the work at issue. *See*

- 14 -

*Porter v. Wertz*, 416 N.Y.S.2d 254, 259 (1st Dep't 1979), *aff'd*, 421 N.E.2d 500 (N.Y. 1981)

("[Defendant's] claim that the failure to look into [seller's] authority to sell the painting was

consistent with the practice of the trade does not excuse such conduct."). Indeed, as the *Porter*

court made clear: "[c]ommercial indifference to ownership or the right to sell facilitates traffic

in stolen works of art. Commercial indifference diminishes the integrity and increases the

culpability of the apathetic merchant. In such posture, Defendant cannot be heard to complain."

*See id.*[8]

The *Lindholm* and *Morgold* cases—upon which the NGA relies heavily in its motion—

both cite *Porter* with approval. *See Lindholm*, 925 A.2d at 1057; *Morgold, Inc. v. Keeler*, 891 F.

Supp. 1361, 1368 (N.D. Cal. 1995). The NGA, however, ignores the fact that on the facts

alleged in the Complaint, *Lindholm* and *Morgold* (applying *Porter*) both militate *for* a finding

that the NGA was not a good faith purchaser of the Painting. Specifically, in *Lindholm*—a case

involving the sale of a Warhol painting entitled *Red Elvis*—the defendant took the independent

step of conducting his own due diligence. *See Lindholm*, 925 A.2d at 1052-55. There, defendant

engaged counsel to negotiate and memorialize the sale of the painting, conducted a lien search to

determine whether any prior claim had been made to the painting, and contacted the Art Loss

Registry, a central database with worldwide listings of lost, stolen, or disputed artworks. *See id.*.

---

[8] In *Interested Lloyd's Underwriters v. Ross*, this Court noted that because the New York Court
of Appeals did not reach the issue of a merchant's duty to inquire in affirming *Porter*, "[w]hether
or not a duty of inquiry exists in New York in these circumstances is accordingly unclear." *See
Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381, 2005 WL 2840330, at *5 (S.D.N.Y.
Oct. 28, 2005). The Estate respectfully submits that, although the Court of Appeals has not
opined on the subject, the Appellate Division's decision in *Porter* is controlling law in this
District. *Johnson & Johnson Prods., Inc. v. DAL Int'l Trading Co.* (NGA Mem. at 17, 20),
makes a similar claim concerning the controlling nature of *Porter*. *See Johnson & Johnson
Prods., Inc. v. DAL Int'l Trading Co.*, 798 F.2d 100, 104 (3d Cir. 1986). *Johnson & Johnson*,
however, applied New Jersey law, did not reach the issue of commercially reasonable efforts
under the U.C.C., and is therefore inapposite. *See id.* at 106 n.4.

And in *Lindholm*, the purchaser/defendant was a private art collector (millionaire and media mogul Peter Brant), whereas here, the NGA is a large public institution, held in the public trust, with numerous expert staff in its employ. (Geercken Decl. Ex. E (NGA Mission Statement).)

In *Morgold* as well, the defendant—even absent any warning signs as to title of the painting—conducted independent due diligence. *See Morgold*, 891 F. Supp. at 1368. For example, the *Morgold* defendant contacted a gallery where the painting had previously hung to inquire about value and provenance. *See id.* Further, the *Morgold* defendant contacted an outside, disinterested expert on similar issues. *See id.* In neither case (nor in any other case cited by the NGA) did the purchaser defendant show good faith by relying on a one-page "Seller's Warranty" signed by the seller or seller's agent. Not surprisingly, research for this Opposition has failed to unearth such a case.

Here, the Complaint alleges that the NGA did *nothing* (or essentially nothing) to investigate title of the Painting although reasonable commercial standards in the industry required it to at least look into the circumstances under which the Painting became available for sale. (*See* Compl. ¶¶ 5-6, 26, 103-04, 143-45 (NGA either knew of or recklessly disregarded fraud and conducted no due diligence), 103-04, 143-45 (NGA's lack of due diligence did not comport with commercially reasonable standards in the industry).) The NGA didn't even make the minimal effort of contacting Ms. Jolles Shefner, or of inquiring with the experts of the world, Tuchman and Dunow, as to how the Painting had come into Tuchman's hands. Further, the NGA did not check with the Art Loss Registry, it did not hire outside counsel to negotiate its purchase of the Painting, nor did it engage the services of an outside, disinterested expert to

opine on value, authenticity, and/or provenance of the Painting.[9]  Rather, the NGA argues that by

relying on Tuchman (as a world expert on Soutine) and his purported "Seller's Warranty," it met

the requirements of *Morgold*.  This argument must fail, however, because—as the NGA itself

argues—reliance on Tuchman (inasmuch as he was the counterparty in the sale to the NGA)

would have been patently unreasonable, absent special facts peculiarly within Tuchman's

knowledge such as those relied upon by Ms. Jolles Shefner.[10]  Both *Morgold* and *Lindholm*

therefore militate *against* the NGA's motion and *for* a finding that—on the facts alleged in the

Complaint—the NGA was not a good faith purchaser.[11]

      The NGA does agree, however, that had a warning sign arisen vis-à-vis title to the

Painting, the NGA would have had a duty to inquire, but argues that no such warning signs have

been pled.  (*See* NGA Mem. at 21-26.)  The NGA's argument in this regard is again based on

selective reading of the Complaint, and ignores the Estate's clear allegations that:

- the NGA was itself paying a price well below market (Compl. ¶ 106);

- the last record owner of the Painting was Ms. Jolles Shefner and there was no
  record of how the Painting had fallen into Tuchman/Dunow's hands (*id.* ¶¶ 5,
  103, 107, 144);

---

[9] Indeed, as the NGA says it dealt exclusively with Tuchman in its purchase of the Painting, it could have picked up the phone and called Dunow, who is of at least equal status with Tuchman in the art world vis-à-vis Soutine.

[10] The facts concerning title to the Painting at the time the NGA purchased it were not "peculiarly within [Tuchman's] knowledge," inasmuch as the NGA (as was the case in *Morgold*) could have contacted an independent expert (such as Dunow and/or others) to research provenance or picked up the phone and called Ms. Jolles Shefner.  The *special facts* doctrine therefore does not apply to the NGA's reliance on Tuchman.

[11] The NGA appears to misread *Morgold* to require inquiry only where there are warning signs surrounding a sale.  (*See* NGA Mem. at 19.)  There is no such restriction in *Morgold*, indeed, the *Morgold* court explicitly found that *even absent warning signs*, at least some level of inquiry was required to meet the standards of the U.C.C.  *See Morgold*, 891 F. Supp. at 1368 (finding that "no warnings were apparent to" defendants).  In any event, *Morgold* certainly does not stand for the proposition that, absent a warning sign, *no* due diligence is required.  *See id.*

- the Painting had possibly changed hands during the Nazi era, giving rise to a heightened level of due diligence (*id.* ¶ 104); and

- it is generally considered improper in the art world for an authenticity expert (such as Tuchman and Dunow) to broker or otherwise have an interest in the sale of a painting in which the expert specializes (*id.* ¶ 23).

The NGA further argues that it is entitled to good faith purchaser status because even had it conducted due diligence, the NGA would not have discovered the fraud. (*See* NGA Mem. at 26-29). This too is not only wrong on the facts, (*see, e.g.,* Compl. ¶ 145), it is wrong on the law. Under U.C.C. § 2-103(1)(b), a merchant is required to undertake <u>some</u> inquiry, regardless of whether or not the inquiry would have been successful. *See Lindholm*, 925 A.2d at 1057 (inquiry required although it did not reveal adverse claim to painting). For this reason, the NGA cites to no case (nor has research for this Opposition uncovered any) stating that under U.C.C. § 2-103(1)(b), no inquiry is required (and good faith purchaser status therefore automatically attaches) where such inquiry would have been futile. Indeed, the NGA's proffered rule would turn the U.C.C. on its head, affording purchasers of art the most protection where title is most murky (as in a black or other illicit market). It is, however, in such a situation where due diligence is *most* required (because the questions as to title are so grave), and allowing a purchaser to engage in little or no due diligence but nevertheless enjoy the status of a good faith purchaser would only lead to trafficking in stolen art. *See Porter*, 416 N.Y.S.2d at 259 ("Commercial indifference to ownership or the right to sell facilitates traffic in stolen works of art.").

Not surprisingly, the case law to which the NGA cites in this regard fails to provide the support it seeks. For example, the NGA cites to *Garner v. First Nat'l City Bank* for the proposition that liability for breach of the duty to inquire only arises where such inquiry would not have been futile. (*See* NGA Mem. at 27.) *Garner*, however, relies on Article 8 of the

- 18 -

U.C.C., not Article 2.  *See Garner v. First Nat'l City Bank*, 465 F. Supp. 372, 383 & n.17

(S.D.N.Y. 1979).  The NGA fails to cite (nor has the Estate uncovered) any case applying Article

2 holding that futility released a merchant from its burden of commercially reasonable due

diligence.  To the contrary, in *Lindholm*, inquiry was required even though it proved, in the end,

to be futile.  *See Lindholm*, 925 A.2d at 1057.  As a result, in order to acquire good faith

purchaser status, a merchant must engage in some level of due diligence, even if futile.  *See* N.Y.

U.C.C. § 2-103 (nowhere relieving merchant of due diligence obligation where futile).  Further,

the *Garner* court found that liability for lack of inquiry actually attached because such inquiry—

as the Complaint alleges here (*see* Compl. ¶ 145)—would have successfully revealed the adverse

claims at issue.  *Garner*, therefore—if at all applicable—militates *for* a finding that the NGA was

not a good faith purchaser.

More amazingly, the NGA's own documents show that it *still* doesn't know from whom

it purchased the Painting.  In its motion, the NGA makes much of the letter from NGA counsel,

Elizabeth Croog, to the Estate and the purported "Seller's Warranty" she attached.  (*See* NGA

Mem. at 26.)  The NGA claims that Ms. Croog's letter and the "Warranty" show that the NGA

purchased the Painting from the Galerie Cazeau-Béraudière, with Tuchman acting as agent.  (*See*

*id.*; Normand Decl. Ex. B.)  The NGA's own website, however, nowhere makes mention of the

Galerie Cazeau, but rather lists the Painting's former owner as *none other than Maurice*

*Tuchman*—noting that the NGA purchased the Painting from Tuchman on November 17, 2004 in

New York.  (*See* Geercken Decl. Ex. D.)

In addition, the *Catalogue Raisonné* page proffered by the NGA shows that the NGA has

not yet—more than four years after its purchase of the Painting—reviewed materials in its own

possession to independently verify title, provenance, and authenticity of the Painting.  This is

because the *Catalogue Raisonné* page attached to the Normand Declaration came from the Estate—sent to the NGA in response to Ms. Croog's request (preceding her 6/29/07 Letter) for information missing from the NGA's provenance files. As set forth in the accompanying Shefner Decl., the fax line at the top of the page (as well as the interlineations on the page) show this to be true. (Shefner Decl. ¶¶ 4-5 & Ex. A.) The NGA attached the Estate's page despite the fact that the *Catalogue Raisonné* is clearly held in the NGA's own library. (Geercken Decl. Ex. F.) What this makes clear is that four years after the NGA's purchase of the Painting, the NGA *still* hasn't even consulted its own library to research provenance of the Painting, but rather continues to rely exclusively on the representations of others, despite clear warning signs (and now, indeed, a full-blown litigation) concerning title.

Or it shows that the NGA is covering its tracks. For example, the NGA tries to shift focus from the discrepancy on its web site by claiming—in a footnote and without supportive proof—that "[t]he [NGA] website does not purport to list the complete provenance history of the Painting," or otherwise intimating that the discrepancy is a mistake. (NGA Mem. at 26 n.9.) The NGA's own mission statement, however, would beg to differ. (Geercken Decl. Ex. E (touting the NGA's excellence in provenance research).) Further, the NGA's footnote does little to explain why, to this day, the NGA continues to speak out of both sides of its mouth concerning the Painting. To the public, it says that it purchased the Painting from the expert of the world, Maurice Tuchman—a statement that certainly bolsters both the Painting's *caché* and the NGA's reputation in being able to acquire one of the last *beef*-paintings in private hands. To the Estate (and the Court), the NGA says that it purchased the Painting from a purportedly disinterested third-party abroad, the Galerie Cazeau-Béraudière. Here too, the NGA would have its cake and eat it too, changing its story as suits its needs. The Estate respectfully submits that

the NGA's self-serving and contradictory statements in this regard only underscore the Estate's

allegations that the NGA not only failed to conduct adequate due diligence vis-à-vis the Painting,

it was also aware from the beginning of the fraudulent methods Tuchman, Dunow and others

used to acquire the Painting from Ms. Jolles Shefner.[12]  (Compl. ¶ 6.)

### III.    THE ESTATE'S UNJUST ENRICHMENT CLAIM AGAINST THE NGA IS PROPER.

#### A.    This Court Has Subject Matter Jurisdiction.

The NGA argues that this Court lacks subject matter jurisdiction over the Estate's unjust

enrichment claim, but, as the NGA must acknowledge, where jurisdiction before this Court is

already otherwise proper, exercise of equitable jurisdiction over a related claim is also proper.

(*See* NGA Mem. at 31 (citing *Weldon v. United States*).)  *See also Mora v. United States,* 955

F.2d 156, 159-60 (2d Cir. 1992) (allowing equitable claim arising from loss of property to

proceed despite possible remedy under FTCA).[13]

---

[12] Contrary to the NGA's intimations, Rule 9(b) does not apply to allegations of knowledge or state of mind.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  The Estate is therefore not required to allege any further factual support for its claim that the NGA knew of the fraud perpetrated upon Ms. Jolles Shefner when it purchased the Painting from Tuchman.  Nevertheless, the Estate clearly alleges how the NGA began its efforts to acquire the Painting the same time that Tuchman acquired it, and that the NGA ignored (whether knowingly or negligently) numerous "warning signs" that the Painting had been acquired illicitly, including that the NGA was acquiring the Painting at a price well below market and that Tuchman was seriously conflicted in selling the Painting to it.

[13] Tellingly, the NGA does not claim that an unjust enrichment claim against the government is *absolutely* barred, rather it attempts the much narrower point that an unjust enrichment claim may not be made *under the FTCA*.  *Mora* (cited above) stands as an example that an unjust enrichment claim against the government is jurisdictionally proper.  *See also Republic Sav. Bank, FSB v. United States*, 80 Fed. Cl. 295, 303 (Ct. Cl. 2008) (awarding damages against government to prevent unjust enrichment).

**B.    The Estate Properly States a Claim for Unjust Enrichment Against the NGA.**

Because subject matter jurisdiction is proper, the NGA attacks the Estate's pleading, arguing that the Estate fails to state an unjust enrichment claim against the NGA because: (i) the Estate doesn't state a claim for the underlying fraud; and, in the alternative, (ii) the Estate's unjust enrichment claim against the NGA is duplicative of its replevin claim. (*See* NGA Mem. at 32-34.) The NGA is wrong.

As for the first issue, as shown above, the Estate more than carries its burden to state a fraud claim, therefore justifying its claim for unjust enrichment. Further, the Estate's unjust enrichment claim against the NGA is not duplicative of its replevin claim. Rather, in its replevin claim, the Estate seeks immediate return of the Painting, whereas in its unjust enrichment claim, the Estate seeks disgorgement of all additional benefits that flowed to the NGA as a result of its bad acts (*e.g.*, exhibition fees; royalties from sales/licensing of images; profit on resale, etc.). *See U.S. ex rel. Taylor v. Gabelli*, No. 03 CIV 8762, 2005 WL 2978921, at *4-6 (S.D.N.Y. Nov. 4, 2005) (highlighting the necessity of disgorgement to remedy unjust enrichment).[14]    As a result, the Estate's unjust enrichment claim against the NGA is both properly pled and non-duplicative its replevin claim.

**IV.    THE NGA IS THE PROPER PARTY TO THIS LITIGATION.**

The NGA correctly asserts that the United States is the only proper defendant in a Federal Tort Claims Act suit. (*See* NGA Mem. at 9 n.2.) The NGA, however, misses the full import of 28 U.S.C. § 1346, which is generally applied to restrict permissible defendants where plaintiff

---

[14] To the extent the Court awards damages on the Estate's replevin claim instead of the Painting's return, those damages would be *compensatory* in nature, making the Estate whole for the loss it suffered as a result of the NGA's bad acts. As set forth in *Taylor*, additional restitutionary/disgorgement damages (for, for example, additional benefits that flowed to the NGA) would therefore still be necessary to prevent the NGA's unjust enrichment. *See Taylor*, 2005 WL 2978921, at *5-6.

sues both the United States *and* the agency involved, or the United States or agency *and* an individual employed by the agency. *See, e.g., Friedman v. United States*, No. 01 Civ. 7518 (LTS)(RLE), 2003 WL 1460525, at *6 (S.D.N.Y. Mar. 18, 2003) (Magistrate's report and recommendation that duplicative claims against governmental employees and agencies be dismissed under 28 U.S.C. § 1346 where United States also named as defendant); *Friedman v. United States*, No. 01 Civ. 7518 (LTS)(RLE), 2003 WL 22846039, at *1 (S.D.N.Y. Dec. 1, 2003) (adopting Magistrate's report and recommendation). It is clear, however, that in numerous cases, federal agencies—including the Smithsonian and/or NGA—are named as defendants. *See, e.g., O'Rourke v. Smithsonian Inst. Press*, 399 F.3d 113 (2d Cir. 2005), *cert. denied*, 546 U.S. 814 (2005); *Johnson v. Smithsonian Inst.*, 189 F.3d 180 (2d Cir. 1999); *Gildor v. United States Postal Serv.*, 179 Fed. Appx. 756 (2d Cir. 2006); *Mac'Avoy v. The Smithsonian Inst*, 757 F. Supp. 60 (D.D.C. 1991); *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 566 F.2d 289 (D.C. Cir. 1977); *Hooker v. United States Post Office*, 255 Fed. Appx. 658 (3d Cir. 2007); *Klimas v. Dep't of the Treasury*, 122 Fed. Appx. 355 (9th Cir. 2005), *cert. denied*, 544 U.S. 1000 (2005). Therefore, in suing the NGA (and only the NGA), the Estate *is* suing the United States (and not, for example, any other party *in addition* to the United States or the United States *and* its agency together), and has therefore complied with the statute. *See Peak v. S.B.A.*, 660 F.2d 375, 377 (8th Cir. 1981) (where the given tort claim is cognizable under 1346(b), "the FTCA is the exclusive remedy if: (1) the suit is against a federal agency[,] and (2) the suit sounds in tort").

Even if this weren't the case—which it clearly is as set forth above—the Estate understands the NGA's footnote no. 2 as consent to substitute the United States as defendant for the NGA, which consent the Estate accepts if the Court deems such substitution appropriate.[15]

## V.    IN THE ALTERNATIVE, THE ESTATE SEEKS LEAVE TO AMEND, IF NECESSARY.

On the basis of the above, the Estate respectfully submits that no amendment of the Complaint is necessary and the NGA's motion should be denied in full. In the event, however, that this Court deems the Estate not to have met one or more of its pleading burdens, or deems that the NGA's motion should be granted in any respect, the Estate respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15. Such leave is liberally granted. *See Nomura Sec. Int'l, Inc. v. E\*Trade Sec., Inc.*, 280 F. Supp. 2d 184, 198-199 (S.D.N.Y. 2003) (citing rule). The NGA identifies no prejudice to it, should such leave be granted, nor can it given the early stages of this litigation. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." (citations omitted)) As a result—if necessary as set forth above—the Estate's request for leave to amend should be granted.

---

[15] As for the issue of conflict of laws, it is the Estate's position that New York law applies to the claims against the NGA, and the NGA seems to accept this. (*See* NGA Mem. at 9 n.3.) In any event, the NGA admits that there would be no conflict between New York and D.C. law, obviating the need for any conflict of laws analysis. (*See id.*)

## CONCLUSION

For the reasons set forth above, the Estate respectfully requests that the Court issue an order denying the NGA's motion in all respects or, in the alternative, granting the Estate leave to amend its Complaint, should the Court deem it appropriate to grant any part of the NGA's motion.

Dated: New York, New York
       August 28, 2008

ALSTON & BIRD LLP

By: _____

Karl Geercken (KG 5897)
F. Paul Greene (FG 1837)
90 Park Avenue
New York, New York 10016
Tel.: (212) 210-9400
Fax: (212) 210-9444

*Attorneys for Plaintiff the Estate of Lorette Jolles Shefner*

30909721