UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

THE ESTATE OF LORETTE JOLLES SHEFNER     :    Case No. 08 CIV 4443
by and through its executors Mr. Barry Shefner, Ms.    :
Ariela Braun, and Mr. Leon Miller,              :    **PRELIMINARY PRE-**
                                     :    **TRIAL STATEMENT**
                Plaintiff,         :

                                       :

    -against-                         :

                                       :

MAURICE TUCHMAN, ESTI DUNOW, the          :
GALERIE CAZEAU-BÉRAUDIÈRE, the           :
NATIONAL GALLERY OF ART, LONTREL      :
TRADING, and JOHN DOES 1-10.            :

                                       :

-------------------------------------------------------------- X

      Pursuant to Federal Rule of Civil Procedure 26(f) and the Initial Conference Order of this

Court dated May 16, 2008, Plaintiff the Estate of Lorette Jolles Shefner ("Plaintiff" or the

"Estate") and Defendants Maurice Tuchman ("Tuchman"), Esti Dunow ("Dunow"), and the

National Gallery of Art (the "NGA") jointly submit this Preliminary Pre-Trial Statement.[1]

**(a) <u>The Nature of this Action</u>**

      Plaintiff asserts causes of action for fraud, unjust enrichment, declaratory judgment,

rescission, and replevin.  This action arises from the sale of a painting by the artist Chaim

Soutine, entitled *Piece of Beef* (the "Painting"), by Plaintiff's decedent to or through one or more

Defendants and the resale of the Painting to the NGA.  Plaintiff seeks damages, rescission of the

sale by its decedent, declaratory judgment, and return of the Painting, by virtue of the fraudulent

and other acts of certain of the Defendants.

---

[1] The summaries of factual and legal issues given below are, as per the Court's May 16 Order, concise and summary
in nature, and should not be taken to encompass every material or other fact or legal issue to be decided or otherwise
of import in this Action.

The NGA asserts that it was a good faith purchaser of the Painting. The NGA has filed a motion to dismiss the complaint against it for failure to state a claim, and for lack of jurisdiction with respect to the Estate's unjust enrichment claim against the NGA.

**(b) The Basis of the Court's Subject Matter Jurisdiction**

**A.     Plaintiff's Position**

Jurisdiction over the claims asserted against the NGA arises under 28 U.S.C. § 1346 (Federal Tort Claims Act, "FTCA") and otherwise under the equity jurisdiction of this Court. Jurisdiction over the remaining parties arises under 28 U.S.C. § 1367 (supplemental jurisdiction).

**B.     Defendants Tuchman/Dunow's Position**

Tuchman and Dunow have filed an Answer to the Complaint.

**C.     Defendant the NGA's Position**

As set forth in the NGA's motion to dismiss, the Estate fails to allege a proper basis for subject matter jurisdiction over its unjust enrichment claim against the NGA, as such an equitable claim is not cognizable under the Federal Tort Claims Act.

**(c) Concise Statement of Material Uncontested or Admitted Facts**

1.     In 1981, Plaintiff's decedent, Ms. Lorette Jolles Shefner, purchased the Painting from a gallery in Paris, France.

2.     Plaintiff's decedent and defendants Tuchman and Dunow engaged in discussions regarding the sale of the Painting. The sale of the Painting occurred in May 2004 for $1 million.

3.     The NGA had discussions with Tuchman concerning its potential acquisition of the Painting, which discussions culminated with the NGA purchasing the Painting later that year.

4.     Tuchman and Dunow admit that they received compensation for their role in the NGA's acquisition of the Painting.

5.    The Estate has tendered correspondence purporting to constitute an administrative claim to the NGA under the Federal Tort Claims Act, demanding return of the Painting or, in the alternative, payment of a sum certain. The NGA has denied the Estate's demand and claim.

**(d) Concise Statement of Uncontested Legal Issues**

New York law applies to the underlying claims against the non-governmental Defendants.

**(e) Concise Statement of Legal Issues to Be Decided by the Court**

**1.    Plaintiff's Position**

(a) Did Tuchman and Dunow (together with other Defendants) fraudulently induce Ms. Jolles Shefner to sell the Painting at a price well below its market value?

(b) Should the contract of sale for the Painting therefore be rescinded?

(c) May the NGA properly claim *bona-fide*, good-faith-purchaser status vis-à-vis its acquisition of the Painting?

**2.    Defendant the NGA's Position**

(a) Does the complaint state a claim against the NGA?

(b) Does the Court have jurisdiction over the Plaintiff's unjust enrichment claim against the NGA?

**(f) Each Party's Concise Statement of Material Disputed Facts**

**A.    Plaintiff's Position**

Tuchman and Dunow are the world experts on Soutine and therefore have comprehensive and unique knowledge of each and every sale, public and private, of a Soutine painting since 1993, including the prices thereof. In or about December 2003, Tuchman and Dunow contacted Plaintiff's decedent with regard to the Painting. They ultimately induced her to sell it at less than

fair market value. In inducing Ms. Jolles Shefner to sell the Painting to or through them, Tuchman and Dunow presented her with a list of alleged comparables (the "List"), upon which they intended Ms. Jolles Shefner to rely. The List tendered by Tuchman and Dunow was materially incomplete inasmuch as it, *inter alia*, omitted every sale of a Soutine painting for over $508,500 from 1993 to 2004 and gave the false impression that the market for Soutine's works was in decline. These material omissions were known to Tuchman and Dunow when they tendered the List, a time at which they were well aware of the iconic value of the Painting.

Ms. Jolles Shefner—because of the status of Tuchman and Dunow and because of their comprehensive and unique knowledge in the field—reasonably relied on the List to her detriment in selling the Painting to or through Tuchman, Dunow and/or other Defendants, and suffered damages thereby. The Estate is aware that Tuchman and Dunow intend to claim that Ms. Jolles Shefner's children exercised independent judgment in regard to the sale of the Painting, however, the children acted only as intermediaries (necessitated because of Ms. Jolles Shefner's advanced age and difficulty hearing) and at the direction of Ms. Jolles Shefner.

The NGA—which touts its status as an institution in the public trust and adherence to the highest standards of provenance research in the industry—did effectively no due diligence before purchasing the Painting in or about November 2004 for what it asserts was a purchase price of $2 million. While it began discussions with Tuchman in May/June 2004 about acquiring the Painting, it conducted no independent title search, contacted no independent expert concerning value or provenance, nor did it contact any prior owner of the Painting. The only document the NGA relied upon concerning provenance was a "Seller's Warranty," executed not by the purported seller of the Painting (Galerie Cazeau-Béraudière) but rather by the Galerie's purported agent (and therefore interested party), Maurice Tuchman. This and other failures did

not comport with commercially reasonable standards in the industry, and therefore the NGA may not claim that it was a good faith purchaser of the Painting. In the alternative, the NGA had actual knowledge of the fraud perpetrated on Ms. Jolles Shefner by Tuchman, Dunow, and the other Defendants. Further, because of the fraud on Ms. Jolles Shefner, the contract of sale between Ms. Jolles Shefner and Defendant Lontrel Trading should be rescinded. As a result, the Estate has a right to immediate return of the Painting from the NGA.

With respect to the facts discussed in the foregoing statement, the Estate believes that the following facts are largely uncontested and/or supported by documentary evidence:

(a) Tuchman and Dunow are amongst the foremost authorities on Soutine and made representations to Ms. Jolles Shefner.

(b) Specifically, Tuchman and Dunow stated that a prior offer for $800,000, rejected by Ms. Jolles Shefner, was "exceptionally advantageous for you in our opinion," and attached a 3-page listing of what they considered comparable sales spanning a 10-year time frame.

(c) Tuchman and Dunow did not disclose that Galerie Cazeau-Béraudière was involved in the transaction in any way.

(d) The NGA also asserts that it purchased the Painting from Galerie Cazeau-Béraudière, with Tuchman acting as seller's agent.

(e) The buyer of the Painting was identified to Ms. Jolles Shefner as "Lontrel Trading c/o Alain Disch," and "Lontrel Trading c/o Alain Disch" was the buyer identified in the contract of sale for the Painting.

**B.      Defendants Tuchman and Dunow's Position**

Tuchman and Dunow are among the world's foremost authorities concerning questions of authenticity as to the paintings of Soutine. Their jointly authored *catalogue raisonné* is

considered authoritative by their peers. As scholars whose expertise is limited in scope and who rarely are involved in the sale of these works, it is not within their purview to have comprehensive knowledge of the historical record of the sale prices of Soutine's paintings.

Through their research on the *catalogue raisonné,* Tuchman and Dunow were affiliated with co-defendant Galerie Cazeau-Béraudière, a Parisian art gallery that was sponsoring its publication. The gallery, acting anonymously through Tuchman and Dunow as is customary in the art world, communicated an offer of $800,000 for the Painting to Ms. Ariela Braun, who, together with her brother Mr. Barry Shefner, acted as intermediary on behalf of their mother, Ms. Jolles Shefner. Mr. Barry Shefner negotiated a counteroffer of $1 million, which, upon instruction from Galerie Cazeau-Béraudière, Tuchman and Dunow accepted.

Prior to the sale, Tuchman and Dunow provided Ms. Ariela Braun with a list of comparables of past auction sales of Soutine's still life paintings, including one belonging to a series related to that of the Painting, which list was a public record.

Also, prior to consummating the transaction, Ms. Ariela Braun consulted with an independent third party—one of the most prominent auction houses in the world—as to the prospective sales price for the Painting. Following this consultation, the parties consummated the $1 million sale, which was a record price for a Soutine still life painting at the time.

As Tuchman and Dunow advised the sellers that Tuchman and Dunow were acting on behalf of the prospective purchaser of the Painting, and as the sellers sought and obtained advice from a reputable independent third party auction house, the Complaint fails to state a claim for fraud.

The NGA began its efforts to purchase the Painting at or about the time of the above sale. Tuchman and Dunow never procured the NGA as a prospective purchaser "waiting in the wings" for a quick resale of the Painting.

Finally, Tuchman and Dunow do not agree with Plaintiff's representation that certain of the "facts" listed in Section (f)(A) above are largely uncontested.

**C.    Defendant the NGA's Position**

As set forth in the NGA's motion to dismiss, the Estate fails to state a claim against the NGA. The Estate does not allege that the NGA itself engaged in any fraudulent conduct; all of Estate's claims against the NGA are premised on the alleged fraud by Tuchman, Dunow, and the other defendants. The Complaint, however, fails to state a claim for fraud. Ms. Jolles Shefner and her children (now executors of the Estate) were advised that Tuchman and Dunow were acting on behalf of the prospective buyers of the Painting, and thus they could not reasonably have relied on the alleged statements or omissions by Tuchman or Dunow with regard to the Painting's fair market value. The Complaint also fails to allege that Ms. Jolles Shefner or her children took any steps to independently verify the Painting's value, a necessary element of reasonable reliance.

In any event, the NGA was a good faith purchaser of the Painting, and thus obtained good title under the Uniform Commercial Code notwithstanding any alleged fraud by Tuchman and Dunow. The Complaint fails to allege any facts that would have triggered a duty by the NGA to inquire into the circumstances of Shefner's earlier sale of the Painting to or through Tuchman and Dunow, and such inquiry would not have uncovered the alleged fraud. The Estate's claims against the NGA therefore lack merit.

The NGA does not agree with the Estate's statement in Section (f)(A) that certain facts identified in that section are largely uncontested.

**(g) Legal Basis for Claims Asserted**

Plaintiff bases its claim for declaratory judgment on 28 U.S.C. § 2201 *et seq.* Plaintiff bases its claims for fraud, rescission, unjust enrichment, and replevin on the common law of New York.

**(h) Defendants' Concise Statement of Legal Bases of Defenses Asserted**

**A.    Defendants Tuchman and Dunow's Position**

Defendants Tuchman and Dunow base their defenses to the allegations on the common law of New York.

**B.    Defendant the NGA's Position**

As set forth in the NGA's motion to dismiss, the Estate fails to state a claim against the NGA for replevin, unjust enrichment, or a declaratory judgment, and the Court lacks jurisdiction over the Estate's unjust enrichment claim under the FTCA. The NGA was a good faith purchaser of the Painting, and thus obtained good title under the Uniform Commercial Code, notwithstanding any alleged fraud by Tuchman, Dunow or the other defendants. If the Court were to find the NGA liable as to any of the Estate's claims, the NGA would be entitled to full contribution and/or indemnification from the other defendants, whose alleged fraud forms the basis for all of the Estate's claims against the NGA.

**(i) Measure of Proof and on Whom Burden Falls**

The burden is on the Estate to prove, by clear and convincing evidence, that it was defrauded by Tuchman, Dunow, and/or other Defendants. On its other claims, the burden is on the Estate to show by a preponderance of the evidence that it is entitled to the relief it seeks. On

any defense asserted by any Defendant that is deemed an affirmative defense by law, the burden is on such Defendant to show by a preponderance of the evidence that the affirmative defense applies. On any cross-claim asserted by any Defendant, the burden is on such defendant to show by a preponderance of the evidence or by clear and convincing evidence (depending on the nature of the cross-claim) that it is entitled to the relief it seeks.

**(j) <u>Amendment/Substitution</u>**

**A.     Plaintiff's Position**

The Estate does not, at the present time, anticipate amendment of its pleadings, but reserves the right to amend and/or join additional parties to conform to the facts revealed through discovery and/or if necessary as a result of motion practice. Given the nature of the fraud perpetrated on Ms. Jolles Shefner and the facts withheld from her in the transaction at issue, the Estate suggests the deadline for amending the pleadings and/or adding or substituting parties be set after the depositions of each Defendant and/or its principal have been completed.

The NGA has indicated that it believes that under the FTCA, the Unites States should be substituted as defendant for the NGA, and that it consents to such a substitution. Based on relevant case law, *see, e.g., Johnson v. Smithsonian Inst.*, 189 F.3d 180 (2d Cir. 1999) (FTCA action brought against Smithsonian Institution directly) and as set forth in the Estate's Opposition to the NGA's motion to dismiss, the Estate believes that the NGA is a proper party to this action under the FTCA. To the extent, however, this Court deems it appropriate to substitute the United States for the NGA, the Estate would consent to such a substitution.

**B.     Defendant the NGA's Position**

It is well established that an action under the FTCA "must be brought against the United States rather than an agency thereof." *See, e.g., Mignona v. Sair Aviation, Inc.*, 937 F.2d 37, 40

(2d Cir. 1991) (citing 28 U.S.C. § 2679(a) and case law), *cited with approval in ABC v. DEF*, 500 F.3d 103, 105 (2d Cir. 2007), *vacated on other grounds*, 128 S. Ct. 2079 (2008).  The Estate's reliance on *Johnson v. Smithsonian Institution*, 189 F.3d 180 (2d Cir. 1999), is misplaced, as the court in that case did not address the issue of whether the Smithsonian Institution, or the United States of America, is the proper defendant in an FTCA action.  The statute makes clear that the United States is the only proper defendant under the FTCA.  *See* 28 U.S.C. §§ 1346(b) (providing for "exclusive jurisdiction of civil actions on claims against the United States"); *id.* § 2679(a) (authority of agency to sue and be sued "shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive").

**(k) <u>Consent to Transfer to a Magistrate</u>**

One party to this action does not consent to transfer of this case to a Magistrate for any determination of the merits.  However, that same party would welcome the opportunity for court-assisted mediation through a Magistrate.

The other parties who have appeared in this action would consent to the transfer of this case to a Magistrate for determination of the merits.  They do not believe, however, that court-assisted mediation at this time would produce any resolution of this action.

**(l) <u>Changes to Requirements of Initial Disclosures</u>**

The parties see no need for any change to the form or requirements of initial disclosures (other than as set forth below by the NGA) and agree to a due date of initial disclosures of September 29, 2008.

### A.    Plaintiff's Position

Plaintiffs understand that the NGA will seek to stay discovery of the NGA pending resolution of its motion to dismiss.  Given the central role of the NGA in the resale of the Painting, and its involvement from the very moment that Tuchman, Dunow, and others fraudulently induced the sale by Ms. Jolles Shefner, the Estate considers discovery of the NGA according to the applicable rules to be central to an expeditious resolution of this matter. Inability to take discovery of the NGA at this time may well impede the progress of discovery against the other defendants.  Further, in the meet and confer between the parties concerning this Statement, the NGA has failed to identify any prejudice to it—other than the obligation to respond to discovery demands—if discovery should go forward.  As a result, the Estate would vigorously oppose any application by the NGA to stay discovery at this time.  Further, the Estate requests that any such application be made pursuant to Your Honor's Individual Practices (*i.e.*, only after appropriate efforts at informal resolution and a Local Rule 37.2 conference), as well as on notice and via formal motion.

### B.    Defendant the NGA's Position

All discovery of the NGA, including initial disclosures, should be stayed pending the Court's determination of the NGA's motion to dismiss, pursuant to Fed. R. Civ. P. 26(c). Because the Estate has failed in several respects to state a claim for relief against the NGA, the NGA should not be burdened with discovery in this matter.  A stay of discovery would not preclude or impede the Estate from seeking discovery from the principal defendants in the case (whose alleged fraud forms the basis for all of the Estate's claims against the NGA).  Further, a stay of discovery of the NGA for the limited period that the motion to dismiss is pending is not likely to substantially delay the ultimate resolution of this action, as the Estate may not complete

service of one defendant (who is alleged to have participated in the fraud along with defendants

Tuchman and Dunow) until November 2008, and there is a substantial possibility that defendants

Lontrel Trading and Galerie Cazeau-Béraudière (who are located abroad) may move to dismiss

the complaint.

**(m) Subjects of Discovery and Proposed Discovery Cut-Off Date**

      **A.**     **Plaintiff's Position**

The Estate anticipates conducting discovery on, *inter alia*:

    (i)     the complete facts and circumstances surrounding the exportation and sale of the Painting by Ms. Jolles Shefner to or through Tuchman, Dunow and others;

    (ii)     Tuchman and Dunow's status in the art world and their comprehensive and unique knowledge as to sales (and value) of Soutine paintings;

    (iii)     the complete facts and circumstances surrounding the purchase of the Painting by the NGA;

    (iv)     any and all communications between any of the Defendants—or between and Defendant and a third party—concerning Ms. Jolles Shefner or the Painting;

    (v)     the damages suffered by Ms. Jolles Shefner and the current value of the Painting;

    (vi)     the practices and procedures by which the NGA handles the acquisition and accession of artworks;

    (vii)     the commercially reasonable standard of due diligence concerning provenance and accession of a painting accepted in the NGA's industry; and

    (viii)     any prior professional relationships between employees of the NGA and Maurice Tuchman / Esti Dunow.

The Estate proposes a fact discovery cut-off of January 30, 2009.

B.    **Defendants Tuchman and Dunow's Position**

Tuchman and Dunow anticipate conducting discovery on, among other related items, the

following:

(i)     any and all communications between Ms. Ariela Braun and Mr. Barry Shefner and among Ms. Ariela Braun, Mr. Barry Shefner and Ms. Jolles Shefner relating to the negotiation and sale of the Painting to Galerie Cazeau Béraudière;

(ii)    any and all communications between Ms. Ariela Braun and/or Mr. Barry Shefner and any third party not related to this action, including, but not limited to, individuals affiliated with any auction house, which communications were related in any manner to the sale of the Painting to Galerie Cazeau Béraudière; and

(iii)   the educational background, employment history and professional experience of Ms. Jolles Shefner, Ms. Ariela Braun and Barry Shefner Mr. Barry Shefner to determine their respective exposure to and participation in prior business transactions whether or not related to the purchase or sale of artwork.

Tuchman and Dunow propose a discovery cut-off date of at least six months from the

date of the Rule 26(f) Conference of September 12, 2008 (*i.e.*, March 12, 2009). Even given

plaintiff's representation that service of the Complaint will first be effected on co-defendant

Galerie Cazeau-Béraudière no later than November 2008 (see Paragraph (r) below), it would be

unrealistic to expect that all parties would have an opportunity to complete discovery within two

months thereafter as contemplated by plaintiff's proposed cut-off date of January 30, 2009.

Further, should service on co-defendant Galerie Cazeau-Béraudière be effected after November

2008, Tuchman and Dunow would request an extension of the six-month period by that same

measure.

C.    **Defendant the NGA's Position**

As set forth above, the NGA requests that the Court stay discovery of the NGA pending

its determination of the NGA's motion to dismiss. The NGA notes that, given that the Estate

- 13 -

may not complete service of the one remaining defendant until November 2008, and given the substantial possibility that defendants Lontrel Trading and Galerie Cazeau-Béraudière may file a motion to dismiss the complaint, the Estate's proposed January 30, 2009 cut-off for all fact discovery is unrealistic. The NGA anticipates that it will take at least six months to complete fact discovery as to all parties to the litigation (and perhaps more, depending on any motions filed by defendants Lontrel Trading and Galerie Cazeau-Béraudière), although, as noted, the NGA does not believe it should be required to submit to discovery during the pendency of its motion to dismiss.

**(n) Expert Discovery**

      **A.**     **Plaintiff's Position**

The Estate currently expects expert discovery on the issues of the value of the Painting and the commercially reasonable standards of due diligence concerning acquisition of artworks in the NGA's industry. The Estate reserves the right to name rebuttal experts. The Estate suggests an expert discovery cut-off date of March 16, 2009.

      **B.**     **Defendants Tuchman and Dunow's Position**

Tuchman and Dunow anticipate expert discovery on the issues of valuation as well as generally accepted business practices and course of dealing in transactions involving the sale of art. Tuchman and Dunow propose an expert discovery cut-off date of June 12, 2009.

      **C.**     **Defendant the NGA's Position**

For the reasons set forth in subsection (m)(C) above, the Estate's proposed March 16, 2009 cut-off for expert discovery is also unrealistic. The NGA anticipates that it will take at least six months to complete fact discovery as to all parties to the litigation (and perhaps more, depending on any motions filed by defendants Lontrel Trading and Galerie Cazeau-Béraudière),

and proposes that expert discovery should be completed within 90 days of the close of fact discovery. As noted, however, the NGA does not believe it should be required to submit to discovery during the pendency of its motion to dismiss.

**(o) <u>Changes in Limitations on Discovery</u>**

    **A.**    **Plaintiff's Position**

    The Plaintiff at the outset of any fraud action is necessarily working at a disadvantage vis-à-vis the full scope of facts and circumstances relevant to its action. The Estate therefore suggests that, given: (i) the numerous facts withheld from Ms. Jolles Shefner concerning the sale of the Painting to or through Tuchman, Dunow and others; and (ii) the various questions the various Defendants will likely raise concerning Ms. Jolles Shefner's knowledge in relation to the Painting, that the parties be allowed to serve substantive Interrogatories. The Estate believes that, pursuant to Local Rule 33.3, substantive Interrogatories would be "a more practical method of obtaining the information sought than a request for production or deposition." It is the Estate's position that the use of substantive Interrogatories at the outset of this action will greatly aid in streamlining and facilitating the fact discovery process as a whole.

    For example, via substantive interrogatories, the Estate will, at the outset of the case, be able to determine the interrelationship between the parties to the transactions at issue so as to streamline the number of depositions taken and the subjects covered therein. Given the number of parties involved and the limitation on the number and duration of depositions under the applicable rules, substantive interrogatories are therefore even more appropriate. Moreover, the record in this action already shows significant discrepancies in the documents at issue, therefore document discovery may not be the best source for information concerning the transactions at issue (some of which may not have been documented at all) prior to depositions. Further, in the

meet and confer between the parties concerning this Statement, Defendants failed to identify any burden to them resulting from substantive interrogatories—other than the obligation of preparing a response.

### B.     Defendants Tuchman and Dunow's Position

Tuchman and Dunow oppose plaintiff's proposal for the use of substantive interrogatories. All of the facts and circumstances pertaining to the sale of the Painting are readily discoverable through the production of all of the records relating to this transaction and by deposition. This case does not involve any complex commercial transactions; rather, it consists of two straightforward sales of a single painting the circumstances of which can easily be ascertained through the testimony of the relatively small number of witnesses involved in this matter. The use of interrogatories will simply be cumulative and duplicative of the information obtained through these other discovery devices consistent with the limitations imposed by Rule 26(b)(2)(C). Plaintiff's mere allegation of fraud does not by definition give rise to the need for this far more burdensome method of discovery.

### C.     Defendant the NGA's Position

As set forth above, the NGA requests that the Court stay discovery of the NGA pending its determination of the NGA's motion to dismiss. If and when discovery of the NGA is appropriate, the Court need not and should not require substantive interrogatories. Such interrogatories are generally prohibited under Local Civil Rule 33.3, as they can be extremely burdensome, particularly at the beginning of a case. The Estate fails to establish that substantive interrogatories would be "a more practical method" of obtaining relevant information about the sales transactions at issue than simple document requests and depositions of the persons involved. Presumably, the Estate intends to seek documents and depositions from the

defendants; there is no reason also to require substantive interrogatories. Moreover, this is a relatively straightforward case. It will not be difficult to identify the small universe of relevant documents and witnesses. Accordingly, the Court should reject the Estate's request to burden the defendants with substantive interrogatories.

**(p) Status of Settlement Discussions/Prospects for Settlement**

      A.      **Plaintiff's Position**

The Estate has made numerous offers to meet with the NGA to discuss settlement, which offers the NGA has rejected. The Estate has made similar offers to meet with the other Defendants to this action, all of which have been rejected. As a result, the Estate sees the current prospects for settlement as limited, but is not averse to having the opportunity to engage in Court-assisted mediation with any or all of the parties involved.

      B.      **Defendants Tuchman and Dunow's Position**

Tuchman and Dunow do not believe that court-assisted mediation at this time would produce any resolution of this action.

      C.      **Defendant the NGA's Position**

The NGA does not believe that settlement discussions would be fruitful at this time. The NGA firmly believes that the Estate's claims against it are not viable. Accordingly it would be inconsistent with the NGA's fiduciary duties and public responsibilities to turn the Painting over to the Estate, or pay money to the Estate.

**(q) Jury Trial/Length of Trial**

      A.      **Plaintiff's Position**

The Estate has requested a jury for all applicable claims (*i.e.*, for its claims against the non-governmental defendants). Further, the Estate would request that because the facts

underlying the various claims are largely identical, the Court allow the jury to hear all the evidence presented on the various claims and defenses together, and that the Court rely on the jury in an advisory capacity in determining the Estate's claims against the NGA.

Given the number of Defendants and the expert testimony involved, the Estate anticipates a trial of approximately two weeks' length.

### B.     Defendants Tuchman and Dunow's Position

Tuchman and Dunow anticipate calling several witnesses on their defense case. Plaintiff's projection of a two-week trial, while perhaps not unrealistic, remains contingent in part on the position of co-defendant Galerie Cazeau-Béraudière, which has yet to answer or otherwise appear in this action.

### C.     Defendant the NGA's Position

Pursuant to 28 U.S.C. § 2402, the Estate's claims against the NGA must be tried to the Court. An advisory jury is not appropriate. To the extent any of the Estate's claims proceeded to trial, the question that the jury would decide (whether Tuchman, Dunow, Galerie Cazeau-Béraudière, and Lontrel Trading defrauded Ms. Shefner and her children) would be distinct from the question that the Court would decide (whether the NGA subsequently purchased the Painting in good faith). The Court is well equipped to decide the claims against the NGA without the assistance of an advisory jury. Further, a determination by the jury that there was no fraud would obviate the need for any determination by the Court of the claims against the NGA. Thus, an advisory jury would not advance the purposes of efficiency or judicial economy. The NGA anticipates that if the Estate's claims against the NGA proceeded to trial, any trial in this matter would require 1-2 weeks.

**(r) <u>Other Orders Under Fed. R. Civ. P. 26(c) or 16(b) and (c)</u>**

      **A.**      **Plaintiff's Position**

Given the fact that all counsel of record are located in this District, the Estate requests that the depositions of Tuchman, Dunow, and the NGA take place in this District. Further, given the fact that the Estate has begun the process of serving Defendant Galerie Cazeau-Béraudière pursuant to the Hague Convention, the Estate requests leave to apply for amendment of any scheduling order issued by the Court depending on the date of service on Galerie. The Estate understands that service was effected, pursuant to the Hague Convention, on Lontrel Trading on August 7, 2008. The Estate understands that the NGA may not, under certain circumstances, consent to deposition in this District, but given: (i) Tuchman and Dunow's consent to same; (ii) the NGA's position that the United States is the only proper party; and (iii) the fact that the United States are certainly located in this District, the Estate submits that the NGA's objection is without merit.

      **B.**      **Defendants Tuchman and Dunow's Position**

Tuchman and Dunow consent to be deposed in this District.

      **C.**      **Defendant the NGA's Position**

As set forth above, the NGA requests that the Court stay discovery of the NGA pending its determination of the NGA's motion to dismiss, pursuant to Fed. R. Civ. P. 26(c). The NGA objects to the Estate's request for a blanket order requiring all depositions of "the NGA" to take place in this district. The NGA and its employees are headquartered in Washington, D.C. If and when discovery of the NGA is appropriate, counsel can meet and confer to determine the appropriate locations for depositions, taking into consideration the needs of the individual

witnesses as well as counsel.  To the extent any disputes arise, they may be brought to the

Court's attention at that time.

Dated: New York, New York
       September 5, 2008

ALSTON & BIRD LLP

By:    /s/ Karl Geercken
       Karl Geercken
       F. Paul Greene
       90 Park Avenue
       New York, New York  10016
       Tel.: (212) 210-9400
       Fax: (212) 210-9444

       *Attorneys for Plaintiff the Estate of
       Lorette Jolles Shefner*


Georges G. Lederman

        /s/ Georges G. Lederman
       Federal Plaza
       52 Duane St. 7th Floor
       New York, New York  10007
       Tel.: (212) 374-9160
       Fax: (212) 732-6323

       *Attorney for Defendants Maurice
       Tuchman and Esti Dunow*

MICHAEL J. GARCIA
United States Attorney of the Southern District
of New York

By:    /s/ Sarah Normand
       Sarah Normand
       86 Chambers St.
       New York, New York  10007
       Tel.: (212) 637-2709
       Fax: (212) 637-2702

       *Attorney for Defendant the National
       Gallery of Art*