UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ESTATE OF LORETTE JOLLES SHEFNER et al.,

    Plaintiffs,

 -v-                                                                                No.  08 Civ. 4443 (LTS)

MAURICE TUCHMAN et al.,

    Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

Non-party movants Jacques de la Béraudière ("Béraudière") and the Galerie Jacques de la Béraudière, S.A. ("Galerie Béraudière") (collectively, "Movants") move pursuant to Federal Rule of Civil Procedure 60(b) to vacate a default judgment entered in 2009 in favor of the Estate of Lorette Jolles Shefner (the "Shefner Estate"), Barry Shefner individually, and the Ariela Braun 2002 Family Trust, against defendants Galerie Cazeau-Béraudière and Lontrel Trading.  For the following reasons, Movants' motion to vacate the judgment is denied.

## BACKGROUND

On May 12, 2008, Barry Shefner, Ariela Braun and Leon Miller, in their capacity as executors of the Shefner Estate[1], commenced an action in this Court against Maurice Tuchman ("Tuchman"), Esti Dunow ("Dunow"), the Galerie Cazeau-Béraudière (the "Galerie Cazeau"), the National Gallery of Art (the "NGA") and Lontrel Trading ("Lontrel") (collectively, "Defendants"), seeking the return of a Chaim Soutine painting entitled *Le Boeuf*

---

[1] Prior to a settlement agreement with the non-defaulting Defendants (discussed infra), the Shefner Estate was the sole Plaintiff in the action.

(the "Soutine Painting") through replevin, a declaratory judgment as to ownership rights, and money damages.  (See Defs. Mot. to Vacate Default J., Decl. of David Hoffman, Ex. 1, March 15, 2013, ECF No. 65 (hereinafter "Hoffman Decl.").)  According to the Complaint, Tuchman and Dunow, who are experts on Soutine, fraudulently induced Lorette Shefner to sell the Soutine Painting to Lontrel for a price well below market value.  (Id. at ¶ 1.)  With the assistance of the Galerie Cazeau, Lontrel then re-sold the Soutine Painting for a substantially higher price to the NGA.  (Id. ¶¶ 27–28.)  The NGA was allegedly aware that the Soutine Painting had previously been acquired by fraudulent means.  (Id. at ¶ 6.)

  At the time of the allegedly fraudulent transaction, the Galerie Cazeau was a French corporation owned by Philippe Cazeau ("Cazeau").  (Mem. in Supp. of Mot. to Vacate Default J. at 1, Dec. 13, 2012, ECF No. 57.)  Jacques de la Béraudière was an employee and minority shareholder of Galerie Cazeau.  (Id.)  Cazeau died on August 29, 2007.  (Hoffman Decl., Ex. 3.)  His wife, Ms. Daniele Cazeau, liquidated the Galerie Cazeau in June 2008.  (See Defs. Mot. to Vacate Default J., Decl. of Jacques de la Béraudière, ¶ 8, Dec. 12, 2012, ECF No. 58 (hereinafter "Béraudière Decl.").)  In a letter dated October 24, 2008, Ms. Cazeau informed the Court that the Galerie Cazeau did not intend to appear in the action.  (Hoffman Decl., Ex. 3.)  The Court informed Galerie Cazeau of its obligation to appear by counsel and the risks of failing to do so, and afforded Galerie Cazeau opportunities to participate in settlement discussions involving the other parties.  (Hoffman Decl., Ex. 4.)

  On May 14, 2009, the Sheftner Estate, along with Barry Shefner and the Ariela Braun 2002 Family Trust (the Estate's beneficiaries), reached a settlement with Defendants Tuchman, Dunow and the NGA.  The agreement stipulated that Barry Shefner and the Ariela Braun 2002 Family Trust ("Acquiring Parties") would purchase the Soutine Painting from the

NGA for the sum of $1,975,000.  (Hoffman Decl., Ex. 5.)  Tuchman and Dunow agreed to contribute $210,000 to the repurchase.  (Id. at ¶ 2.)  The settlement also provided that the Acquiring Parties would be named as additional plaintiffs in the action.  (Hoffman Decl., Ex. 6 at 1.)  The Galerie Cazeau was invited to participate in the settlement proceedings, but declined to do so.  (Hoffman Decl., Ex. 4 ¶ 7.)

On September 25, 2009, the Court permitted Plaintiffs to move for a default judgment against the Galerie Cazeau and Lontrel.[2]  (Order, Sept. 25, 2009, ECF No. 47.)  In its Order, the Court mandated that Plaintiffs' motion for default judgment include sufficient evidence to satisfy Plaintiffs' burden of proof had the action proceeded to trial.  (Id.)

The Order was served on Lontrel, Daniele Cazeau, Jean-Francois Cazeau and Jacques de la Béraudière on October 1, 2009.  (Affidavit of Service, Oct. 2, 2009, ECF No. 48.)  On October 15, 2009, Plaintiffs moved for a default judgment, and on the following day, served a Notice of Motion for Default Judgment on the defaulting Defendants, as well as on Movants here and on Ms. Cazeau, the liquidator of Galerie Cazeau.  (Affidavit of Service, Oct. 16, 2009, ECF No. 52.)  No opposition to the motion was filed.  On December 10, 2009, this Court entered a default judgment in the amount of $975,000, plus pre- and post-judgment interest against the Galerie Cazeau and Lontrel.  (Hoffman Decl., Ex. 9.)

In November 2011, Plaintiffs commenced a second action in New York Supreme Court against Movant Jacques de la Béraudière individually and as owner of the Galerie Béraudière, a Swiss corporation, alleging fraudulent conveyance and successor-in-interest liability.  (Hoffman Decl., Ex. 12 ¶¶ 59–87.)  Plaintiffs also obtained an order of attachment

---

[2]     Pursuant to the settlement agreement, "Plaintiffs" included both the Shefner Estate and the Acquiring Parties.

against Béraudière and the Galerie Béraudière, levying and placing in secure storage a second painting, Willem de Kooning's *Woman in the Garden II* (the "de Kooning Painting"), pending resolution of the state court litigation.  (Hoffman Decl., Ex. 13.)  The order of attachment was executed on November 15, 2011.  (Mem. in Opp. of Mot. to Vacate Default J. at 7, Feb. 5, 2013, ECF No. 62.)

Béraudière and the Galerie Béraudière now move, pursuant to Fed R. Civ. P. 60(b)(4), to have the default judgment against the Galerie Cazeau set aside as void.

DISCUSSION

"[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding" when the judgment is void.  Fed R. Civ. P. 60(b)(4).  A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure, "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."  In re Texlon Corp., 596 F.2d 1092, 1099 (2d Cir. 1979) (internal quotations omitted).

As an initial matter, only "a party or its legal representative" can challenge the validity of a judgment.  Fed R. Civ. P. 60 (b).  Here, Movants Béraudière and Galerie Béraudière are neither legal parties to the action nor legal representatives of parties.  However, the Second Circuit has, under exceptional circumstances, granted standing to a non-party to challenge a default judgment.  See Grace v. Bank Leumi Trust Co. of NY, 443 F.3d 180, 188 (2d Cir. 2006); Dunlop v. Pan Am. World Airways, Inc., 672 F.2d 1044, 1051–52 (2d Cir. 1982).  In both Grace and Dunlop, the Second Circuit cautioned that the exception was limited to the facts of those cases.  Grace, 443 F.3d at 188; Dunlop, 672 F.2d at 1051–52.  In Grace, plaintiffs were minority

shareholders who filed a derivative action against a corporate defendant and its majority shareholder, alleging violations of federal securities law and state law in connection with a freeze-out merger.  Grace, 443 F.3d at 184.  The plaintiffs ultimately settled with the corporation's majority shareholder, who acted on behalf of himself and the corporation.  Neither the corporation nor the shareholder was represented by counsel in connection with the settlement and both were judgment-proof.  Id. at 185.  The District Court entered judgment against the defendants, but the writs of execution were returned unsatisfied.  Id. at 185–86.  Plaintiffs, as judgment creditors, thereafter attempted to use the unsatisfied judgment as a predicate for a fraudulent conveyance action against non-party entities whom the plaintiffs had been unable to sue in the original action.  Id. at 186.  Those non-parties moved to vacate the default judgment as void under Fed. R. Civ. 60(b).  Id. at 186–87.  The Second Circuit held that the non-party movants had standing to challenge the validity of the judgment, holding that:

> where plaintiffs enter into a settlement agreement with a judgment-proof, *pro se* defendant with the intent at the time of the settlement to collect from a third party that allegedly received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for a fraudulent conveyance action against the third party, the third party is "strongly affected" by the judgment and entitled to standing to bring a Rule 60(b) motion.

Id. at 188.  The Grace Court emphasized, however, that its holding was "an exceedingly narrow exception to the well-established rule that litigants, who were neither a party, nor a party's legal representative to a judgment, lack standing to question a judgment under Rule 60(b)."  Id. at 189.  The Court further noted that

> This decision does not mean that similarly situated plaintiffs must automatically defend their judgments from third-party transferees.  Rather, if a plaintiff holds a judgment on liability against a judgment-proof *pro se* defendant and hopes to use the judgment as a predicate for a fraudulent conveyance claim, she need only carry out a judicially supervised inquest to protect her judgment.

Id. at 188.

The limited exception recognized in Grace is inapplicable here.  The judgment challenged by Movants was not entered pursuant to a collusive stipulation with Movants' alleged predecessor in interest.  Rather, following a settlement among the original Plaintiff, its beneficiaries and other defendants, reached through a process in which Galerie Cazeau was invited to participate, Plaintiffs moved for and were granted a default judgment against Galerie Cazeau.  Notice of that motion was served on the Movants here as well as on Galerie Cazeau and its liquidator.  The motion was accompanied by documentary evidence establishing the basis for liability and the damages claimed.  The proceedings were thus the practical equivalent of an inquest.  Cf. Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989) (hearing unnecessary to determine damages specified in a default judgment when district court relied upon documentary evidence and personal knowledge of the record).  By requiring Plaintiffs to provide evidentiary support in their motion for default judgment, the Court ensured that the Galerie Cazeau was afforded due process.  Accordingly, Movants lack standing to challenge the default judgment against Galerie Cazeau.

CONCLUSION

For the foregoing reasons, Movants' motion to vacate the default judgment is denied.  This Memorandum Order resolves docket entry no. 56.

SO ORDERED.

Dated: New York, New York
       June 14, 2013

                                                          _____ /S_____
                                                          LAURA TAYLOR SWAIN
                                                          United States District Judge